McLAREN REGIONAL MEDICAL CENTER v CITY OF OWOSSO
(ON REMAND)

Docket No. 244386. Submitted August 30, 2006, at Lansing. Decided May
   3, 2007, at 9:00 a.m.

McLaren Regional Medical Center (MRMC) and McLaren Medical
   Management, Inc. (MMM), filed a petition in the Tax Tribunal
   challenging the assessment of ad valorem property taxes by the
   city of Owosso for tax years 1999 and 2000 on realty used by the
   petitioners. The petitioners alleged that they qualified for an
   exemption from taxation as charitable institutions under MCL
   211.7o and because they serve a public health purpose under MCL
   211.7r. The Tax Tribunal upheld the assessments. The Court of
   Appeals, SMOLENSKI, P.J., and WHITE and KELLY, JJ., affirmed in an
   unpublished opinion per curiam issued on August 24, 2004
   (Docket Nos. 244386, 250197), that also rejected a similar claim by
   Wexford Medical Group against the city of Cadillac. The Supreme
   Court vacated the Court of Appeals judgment in this case and
   remanded to the Court of Appeals for reconsideration in light of
   *Wexford Medical Group v City of Cadillac*, 474 Mich 192 (2006).
   476 Mich 853 (2006).

   On remand, the Court of Appeals *held*:

   The property at issue was entitled to the "charitable institu-
   tion" tax exemption under MCL 211.7o.

   1. Concerning that exemption, the real estate must be owned
   and occupied by the exemption claimant, the exemption claimant
   must be a nonprofit charitable institution, and the exemption only
   exists when the buildings thereon are occupied by the claimant
   solely for the purposes for which it was incorporated.

   2. The Tax Tribunal's determination that MRMC, not MMM,
   owned the property in question during the 1999 and 2000 tax years
   was supported by competent, material, and substantial evidence in
   the record.

   3. Notwithstanding that MMM did not own the property under
   MCL 211.7o(1), MMM may still qualify for a tax exemption if it
   and the property's true owner, MRMC, each qualified as a chari-
   table institution under MCL 211.7o(3). Section 7o(3) conditions

exemption on ownership of the property by a charitable institution and occupancy of the property by another charitable institution solely for the purposes for which that nonprofit charitable institution was organized or established. Section 7o(3) also requires that, if the property were occupied by its owner solely for the purposes for which the owner's charitable nonprofit institution was organized, the property would be exempt.

4. Factors considered when determining whether an institution is a "charitable institution" that is entitled to a tax exemption include: (a) a "charitable institution" must be a nonprofit institution; (b) a "charitable institution" is one that is organized chiefly, if not solely, for charity; (c) a "charitable institution" does not offer its charity on a discriminatory basis by choosing who, among the group it purports to serve, deserves the service; rather, a "charitable institution" serves any person who needs the type of charity being offered; (d) a "charitable institution" brings people's minds or hearts under the influence of education or religion, relieves people's bodies from disease, suffering, or constraint, assists people to establish themselves for life, erects or maintains public buildings or works, or otherwise lessens the burdens of government; (e) a "charitable institution" can charge for its services as long as the charges are not more than what is needed for its successful maintenance; and (f) a "charitable institution" need not meet any monetary threshold of charity to merit the charitable institution exception; rather, if the overall nature of the institution is charitable, it is a "charitable institution" regardless of how much money it devotes to charitable activities in a particular year.

5. The respondent conceded that MRMC and MMM meet the requirements of factors a, d, and e, but contend that they do not meet the requirements of factors b, c, and f. Regarding factor b, both MRMC and MMM were organized chiefly, if not solely, for charity. Their articles of incorporation identified purposes related to the provision of medical care in the communities served, including provision on a charitable basis to those who are indigent. MRMC and MMM satisfy the nondiscrimination element of factor c. Their bylaws contain clauses prohibiting "discrimination against any persons because of race, color, religion, national origin, age, handicap, ability to pay, or sex." There was testimony that MMM never turned away patients because of their inability to pay for medical services, and a list of patients' rights adopted by MRMC and MMM grants each patient the "right to care without regard for . . . source of payment." Concerning factor f, the overall natures of MRMC and MMM are charitable regardless of how much money they devoted to charitable activities in the tax years

in question. In addition to having been organized for charitable purposes, MMM offered free and reduced-cost medical care to the indigent, accepted patients without regard to their ability to pay for services rendered, and sustained losses when Medicaid and Medicare did not fully reimburse it for the cost of care.

6. Consistently with a requirement in § 7o(3), the evidence supports that MRMC, had it occupied the portions of the realty occupied by MMM for the purposes for which MRMC was organized, would be entitled to the "charitable institution" exemption.

Reversed and remanded for entry of judgment in favor of MRMC and MMM.

*Vlcko, Broder & Fossee, P.C.* (by *Carol L. Fossee* and *Kenneth A. Krasity*), for the petitioners.

*Brown & Stewart, P.C.* (by *William C. Brown* and *Michael W. McMillan*), for the respondent.

ON REMAND

Before: SMOLENSKI, P.J., and WHITE and KELLY, JJ.

PER CURIAM. This case is before us for the second time, on remand from the Supreme Court, after it construed the charitable institution exemption in *Wexford Medical Group v City of Cadillac*, 474 Mich 192; 713 NW2d 734 (2006), an appeal that this Court had consolidated with the instant case when it initially decided the property tax exemption question in *McLaren Regional Medical Ctr v City of Owosso*, unpublished opinion per curiam of the Court of Appeals, issued August 24, 2004 (Docket Nos. 244386, 250197). In *Wexford, supra*, 474 Mich 204-221, the Supreme Court reversed this Court's affirmance of the Tax Tribunal's conclusion that the Wexford Medical Group did not constitute a charitable institution that is entitled to a tax exemption. The Supreme Court additionally "vacate[d] the part of the Court of Appeals judg-

ment that held that petitioner did not qualify for th[e] [public health purpose] exemption." *Id.* at 221.

The Supreme Court vacated this Court's judgment regarding the McLaren petitioners "and remand[ed] this case to the Court of Appeals for reconsideration in light of our decision in *Wexford*," *supra*, 474 Mich 192. *McLaren Regional Medical Ctr v City of Owosso*, 476 Mich 853 (2006). The Supreme Court instructed this Court to "reconsider petitioners' claim that they are entitled to an exemption under MCL 211.7o (charitable institution) or to an exemption under MCL 211.7r (hospital or public health institution)." *Id.* at 853-854. We reverse and remand for entry of judgment in favor of petitioners.

The applicable standard of review is set forth in *Wexford, supra,* 474 Mich 201-202:

> The standard of review for Tax Tribunal cases is multifaceted. Where fraud is not claimed, this Court reviews the tribunal's decision for misapplication of the law or adoption of a wrong principle. *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). We deem the tribunal's factual findings conclusive if they are supported by "competent, material, and substantial evidence on the whole record." *Id.*, citing Const 1963, art 6, § 28 and *Continental Cablevision [of Michigan, Inc] v Roseville*, 430 Mich 727, 735; 425 NW2d 53 (1988). But when statutory interpretation is involved, this Court reviews the tribunal's decision de novo. [Citation omitted.]

The crux of the question presented in this appeal is whether during the 1999 and 2000 tax years, the McLaren petitioners fell within the scope of statutorily defined tax exemptions in MCL 211.7o[1] and MCL

---

[1] In 1999, the charitable institution exemption was defined as follows in MCL 211.7o:

211.7r.[2] When engaging in statutory construction, a court's "paramount concern is identifying and effecting the Legislature's intent. And where a tax exemption is sought, [a court should] recall that because tax exemp-

---

(1) Property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which it was incorporated is exempt from the collection of taxes under this act.

(3) Property owned by a nonprofit charitable institution or charitable trust that is leased, loaned, or otherwise made available to another nonprofit charitable institution or charitable trust or to a nonprofit hospital or a nonprofit educational institution that is occupied by that nonprofit charitable institution, charitable trust, nonprofit hospital, or nonprofit educational institution solely for the purposes for which that nonprofit charitable institution, charitable trust, nonprofit hospital, or nonprofit educational institution was organized or established and that would be exempt from taxes collected under this act if the property were occupied by the lessor nonprofit charitable institution or charitable trust solely for the purposes for which the lessor charitable nonprofit institution was organized or the charitable trust was established is exempt from the collection of taxes under this act.

In 2000, the Legislature replaced the term "property" with "real and personal property." *2000 PA 309.*

[2] The public health purpose exemption provides as follows:

The real estate and building of a clinic erected, financed, occupied, and operated by a nonprofit corporation or by the trustees of health and welfare funds is exempt from taxation under this act, if the funds of the corporation or the trustees are derived solely from payments and contributions under the terms of collective bargaining agreements between employers and representatives of employees for whose use the clinic is maintained. *The real estate with the buildings and other property located on the real estate on that acreage, owned and occupied by a nonprofit trust and used for hospital or public health purposes is exempt from taxation under this act, but not including excess acreage not actively utilized for hospital or public health purposes and real estate and dwellings located on that acreage used for dwelling purposes for resident physicians and their families.* [Emphasis added.]

tions upset the desirable balance achieved by equal taxation, they must be narrowly construed." *Wexford, supra,* 474 Mich 204 (citations omitted).

### CHARITABLE INSTITUTION EXEMPTION

In *Wexford, supra,* 474 Mich 203, the Supreme Court reviewed the language of MCL 211.7o(1), and discerned three basic elements comprising the statutory exemption: " '(1) The real estate must be owned and occupied by the exemption claimant; (2) the exemption claimant must be a nonprofit charitable institution; and (3) the exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated.' " (Citation omitted.)

We first address the ownership and occupancy issue. In the 1999 and 2000 tax years, petitioners used different portions of the property, 216 East Comstock Street in Owosso. The parties do not dispute the following findings of fact by the Tax Tribunal regarding the various property uses during the tax years in question:

> The [McLaren Community] Medical Center building on the subject property was separated operationally into three areas for tax years 1999 and 2000. (Pet Exh 22). The east portion (5,874 sq. ft.) was occupied and used by MMM for the operation of a family medical practice. (Tr. Vol. I, pp. 183). The west portion (4,365 sq. ft.) of the building was occupied and used by MRMC for a laboratory draw station and weight management program. (Tr. Vol. I, pp. 183, 207). MRMC also occupied and used the center portion (6,848 sq. ft.) of the building for a physical therapy program that was discontinued for the tax year 2000. (Tr. Vol. I, pp. 183, 208). No exemption is claimed for the center portion for the tax year 2000.

MMM maintained before the Tax Tribunal and in the prior appeal in this Court that it owned the real

property. This Court did not reach the question of ownership in the prior appeal. *McLaren Regional Medical Ctr, supra,* slip op at 4. The Tax Tribunal rejected MMM's claim that it owned 216 East Comstock:

A threshold issue in this appeal concerns the ownership of the subject property. On the relevant tax days, December 31, 1998 and 1999, title to the subject real property was vested in MRMC by warranty deed executed by THI Associates dated June 9, 1995 (Pet Exh 1). The deed was executed and delivered pursuant to a real estate purchase and sale agreement of June 5, 1995 between MRMC and THI Associates (Pet Exh 6) in connection with MRMC's purchase of the medical practice and designated assets of the Antoynatan Group, P.C. (Pet Exh 5), consisting of three doctors engaged in the practice of internal medicine at the subject property. Nonetheless, MMM claims that it owned the subject property. MMM argues that a memorandum of understanding (Memorandum) entered into as of October 1, 1996 between MRMC, MMM and McLaren Health Care Corporation, the parent and sole member of MRMC and MMM, operated as a conveyance of the subject property from MRMC to MMM. (Pet Exh 7).

Section 2.03 of the Memorandum provides:

"*2.03 Premises.* The Medical Center (MRMC) assigns, transfers, conveys, and delivers to the *Parent* (MHCC), and *Parent* accepts from the Medical Center, the real property described on attached Exhibit E (the "Premises")." (Emphasis added)

The subject property is among those described on Exhibit E to the Memorandum.

Section 3 of the Memorandum provides:

"3. *Contributions.*

"The Parent contributes to MMM the Practices, the Assets to be Transferred, and [$10,000,000] cash. It is the intent of the parties that the Parent immediately divest

itself of all interest in the Practices and that MMM assume all aspects of the ownership and operation of the Practices."

While Section 3 of the Memorandum provides that the Parent, McLaren Health Care Corporation, contributes to MMM the [sic] "the Practices, the Assets to be Transferred and cash," *such terms as used in the Memorandum do not include "Premises." No deed was ever executed by MRMC conveying the subject property to either the Parent,* McLaren Health Care Corporation, *or to MMM even though Section 9 of the Memorandum provides for the preparation and execution of deeds to convey the premises as may be necessary to effectuate the transfer* and document the transactions contemplated in the Memorandum. *The Tribunal finds and concludes that Petitioners have failed to prove by a preponderance of the evidence that MMM, and not MRMC, was the owner of the subject real property on the relevant tax days.*

Because (1) the parties do not dispute that in June 1995, MRMC obtained a warranty deed to 216 East Comstock; (2) petitioners introduced no evidence contradicting that the only relevant deed to MMM was executed in November or December 2002; (3) the Tax Tribunal accurately characterized the contents of the October 1996 memorandum, which distinguished between "Assets to be Transferred" and "premises," and did not expressly purport to transfer from parent company McLaren Health Care Corporation to MMM any real property or "premises"; and (4) respondent's assessor testified that "even on the 2000 record, we still show that the owner of record is McLaren Regional Medical Center," we conclude that the Tax Tribunal's factual findings regarding ownership had competent, material, and substantial evidentiary support in the record, and that the tribunal did not misapply the law in reaching its conclusion regarding ownership. *Wexford, supra,* 474 Mich 201-202. In summary, we accept the Tax Tribu-

nal's determination that MRMC, not MMM, owned the property during the 1999 and 2000 tax years.

Notwithstanding that MMM did not own 216 East Comstock in 1999 and 2000, as required for exemption purposes under MCL 211.7o(1), MMM still may qualify for a 1999 and 2000 tax exemption if it and the property's true owner each qualifies as a "charitable institution." This scenario is contemplated by MCL 211.7o(3), which currently provides:

> *Real or personal property owned by a nonprofit chari-*
> *table institution* or charitable trust *that is leased, loaned, or*
> *otherwise made available to another nonprofit charitable*
> *institution* or charitable trust or to a nonprofit hospital or
> a nonprofit educational institution *that is occupied by that*
> *nonprofit charitable institution,* charitable trust, nonprofit
> hospital, or nonprofit educational institution *solely for the*
> *purposes for which that nonprofit charitable institution,*
> charitable trust, nonprofit hospital, or nonprofit educa-
> tional institution *was organized or established and that*
> *would be exempt from taxes collected under this act if the*
> *real or personal property were occupied by the lessor non-*
> *profit charitable institution or charitable trust solely for the*
> *purposes for which the lessor charitable nonprofit institu-*
> *tion was organized* or the charitable trust was established
> *is exempt from the collection of taxes under this act.*
> [Emphasis added.][3]

MCL 211.7o(1) and MCL 211.7o(3) contain similar elements. The plain language of MCL 211.7o(3) condi-tions exemption on ownership of the property by a "charitable institution" and occupancy of the property by another "charitable institution" "solely for the pur-poses for which that nonprofit charitable institution . . . was organized or established." And, echoing § 7o(1), § 7o(3) also imposes the condition that the property

---

[3] Before its amendment by 2000 PA 309, MCL 211.7o(3) referred to "property," instead of "real or personal property."

would be exempt if occupied by its owner "solely for the purposes for which the lessor charitable nonprofit institution [MRMC] was organized." Consequently, the exemption in MCL 211.7o(3) does not apply unless (1) MRMC, the owner of 216 East Comstock in 1999 and 2000, meets the definition of a "nonprofit charitable institution"; (2) MMM, the occupant, also meets that definition; (3) MMM's occupancy of the property was solely for the purposes for which it was organized or established, and (4) the property would be exempt if MRMC occupied it itself solely for the purposes for which MRMC was organized or established.

Thus, we turn to the important question whether MMM and MRMC are charitable institutions as delineated by the Michigan Supreme Court in *Wexford*, *supra*, 474 Mich 215. Respondent concedes that petitioners meet the requirements of factors 1, 4, and 5, but contends that they do not meet the requirements of factors 2, 3, and 6.

### (1) A "CHARITABLE INSTITUTION" MUST BE A NONPROFIT INSTITUTION.

The articles incorporating MRMC and MMM as Michigan corporations declare them to be nonprofit entities, and respondent does not dispute that petitioners are nonprofit institutions.

### (2) A "CHARITABLE INSTITUTION" IS ONE THAT IS ORGANIZED CHIEFLY, IF NOT SOLELY, FOR CHARITY.

We conclude that during the 1999 and 2000 tax years, both MRMC and MMM were organized chiefly, if not solely, for charity. The articles incorporating MMM, as restated in 1996, list among its organizational purposes "[t]o establish, maintain, operate, support, and carry on activities and services designed to advance or support

the provision of effective and efficient health care services" [Article II(B)], "[t]o engage in, promote or support any activity designed to promote quality of care and the general health and welfare of the communities served by the Corporation" [Article II(D)], and "[t]o engage in charitable, scientific, educational, and research activities designed to promote the health of the public" [Article II(H)]. The articles incorporating MRMC, as restated in 1994, similarly identify medically related purposes of incorporation, including "[t]o establish, construct, own, . . . operate, and support either directly, through subsidiary or affiliate organizations, or in cooperation with other organizations, such facilities and services providing care and treatment for sick, injured, disabled, aged or indigent persons and providing for the preservation of health . . . " [Article II(A)], "[t]o establish, maintain, operate, support, and carry on activities and services designed to advance or support the provision of health care services, including without limitation, programs involving scientific research, preventative health activities, and other health-related education" [Article II(B)], "[t]o carry on, sponsor or participate in programs . . . for the education of the communities served by the Corporation in the preservation of health" [Article II(C)], and "[t]o engage in, promote or support any activity designed to promote the general health or welfare of the communities served by the Corporation . . . ." Article II(D).

Provided that petitioners dispense gifts of medical services, such services meet the definition of "charity" restated by the Supreme Court in *Wexford, supra,* 474 Mich 214:

> (Charity) * * * (is) *a gift,* to be applied consistently with existing laws, *for the benefit of an indefinite number of persons,* either by bringing their minds or hearts under the influence of education or religion, *by relieving their bodies*

*from disease, suffering or constraint*, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. [Internal quotations omitted, emphasis added.]

With respect to the gift element of the "charity" definition, petitioners' articles of incorporation also contain the following identical provision declaring their intent to organize exclusively for charitable purposes:

Article VII

*Notwithstanding any other provision of these Articles, the Corporation shall be organized and operated exclusively for charitable, scientific, and educational purposes within the meaning of Section 501(c)(3) of the Code.* The Corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt under Section 501(a) of the Code and described in Section 501(c)(3) of the Code, or by an organization contributions to which are deductible under Section 170(c)(2) of the Code. No substantial part of the activities of the Corporation shall consist of carrying on propaganda or otherwise attempting to influence legislation, nor shall the Corporation participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of (or in opposition to) any candidate for public office. [Emphasis added.]

Article VIII governing both corporations also provides that "[n]o part of the net earnings of the Corporation shall inure to the benefit of any private person," except that petitioners may "pay reasonable compensation for services rendered and . . . make such lawful payments and distributions in furtherance of the purposes of the Corporation, subject to limitations on the nature and extent of such activities applicable to organizations exempt under Section 501(a) of the Code and described in Section 501(c)(3) of the Code." Additionally, § 1.01 of

MMM's corporate bylaws and § 1.1 of the 1994 amended bylaws of MRMC reinforce that "[t]he Corporation shall be operated exclusively for charitable, scientific, and educational purposes as set forth in the Articles of Incorporation."

In light of these consistent statements of organizational purpose to provide medical services and to "operate[] exclusively for charitable, scientific, and educational purposes," we conclude that both MMM and MRMC satisfy the requirement that they be organized chiefly, if not solely, for charity. *Wexford, supra*, 474 Mich 215 (observing that Wexford Medical Group was "organized as a charitable institution as reflected in its statement of purpose and bylaws"); *Pheasant Ring v Waterford Twp*, 272 Mich App 436, 440; 726 NW2d 741 (2006) (considering articles of incorporation in determining whether the petitioner had organized for charity).

Respondent insists that neither petitioner has organized solely or chiefly for charity because they "only claim[] charity when a debt cannot be collected." However, respondent's contention does not relate to the nature of petitioners' *organization*, but rather to their operation.

(3) A "CHARITABLE INSTITUTION" DOES NOT OFFER ITS CHARITY ON A DISCRIMINATORY BASIS BY CHOOSING WHO, AMONG THE GROUP IT PURPORTS TO SERVE, DESERVES THE SERVICES. RATHER, A "CHARITABLE INSTITUTION" SERVES ANY PERSON WHO NEEDS THE PARTICULAR TYPE OF CHARITY BEING OFFERED.

Petitioners satisfy the nondiscrimination element of the "charitable institution" inquiry. The 1996 bylaws of MMM and the 1994 amended bylaws of MRMC contain similar clauses specifically prohibiting "discrimination against any person because of race, color, religion, national origin, age, handicap, ability to pay, or sex,"

and providing that the "prohibition applies to all phases of operation of the Corporation . . . ." MMM's president, Dennis D. Krzeminski, testified that MMM never turned away patients because of their inability to pay for medical services. Additionally, a list of patients' rights adopted by MMM and MRMC enshrines each patient's "right to care without regard for . . . source of payment." Respondent presented no evidence suggesting that petitioners did not adhere to their stated nondiscrimination policies in providing medical services. The fact that MMM may have made efforts to attempt the collection of debt owed from some particular patient or patients does not reasonably suggest that MMM provided medical services only to those who could afford to pay for them.

(4) A "CHARITABLE INSTITUTION" BRINGS PEOPLE'S MINDS OR HEARTS UNDER THE INFLUENCE OF EDUCATION OR RELIGION; RELIEVES PEOPLE'S BODIES FROM DISEASE, SUFFERING, OR CONSTRAINT; ASSISTS PEOPLE TO ESTABLISH THEMSELVES FOR LIFE; ERECTS OR MAINTAINS PUBLIC BUILDINGS OR WORKS; OR OTHERWISE LESSENS THE BURDENS OF GOVERNMENT.

As discussed above, both MMM and MRMC were organized to provide the community with medical services, and respondent acknowledges that petitioners' provision of medical services relieves people's bodies from disease, suffering, or constraint.

(5) A "CHARITABLE INSTITUTION" CAN CHARGE FOR ITS SERVICES AS LONG AS THE CHARGES ARE NOT MORE THAN WHAT IS NEEDED FOR ITS SUCCESSFUL MAINTENANCE.

Respondent does not dispute that petitioners' service charges do not exceed the amounts of revenue they need for successful maintenance. Krzeminski averred that although MMM charged patients who could afford to pay for medical services, MMM had never earned a

profit and depended for its existence on subsidization by its parent, McLaren Health Care Corporation.

(6) A "CHARITABLE INSTITUTION" NEED NOT MEET ANY MONETARY THRESHOLD OF CHARITY TO MERIT THE CHARITABLE INSTITUTION EXEMPTION; RATHER, IF THE OVERALL NATURE OF THE INSTITUTION IS CHARITABLE, IT IS A "CHARITABLE INSTITUTION" REGARDLESS OF HOW MUCH MONEY IT DEVOTES TO CHARITABLE ACTIVITIES IN A PARTICULAR YEAR.

The testimony at the Tax Tribunal hearing establishes that MMM, which as discussed above is organized for charitable purposes, provided charity during the 1999 and 2000 tax years. Krzeminski, MMM's president, described that MMM placed no limitation on the number of Medicaid and Medicare patients it treated at 216 East Comstock, that the government reimbursed MMM for treatment of Medicaid patients at a rate of approximately 27 to 30 cents per dollar of MMM's standard charges, and that MMM accepted the government's reimbursements as "payment in full" and did not pursue Medicaid and Medicare patients for the differences between MMM's standard charges and the government reimbursement rates. The testimony of Krzeminski, Dr. Carol Vorenkamp, who had worked at MMM's Owosso clinic since February 1997, and Tracey Lynn Minarik, who had worked as clinical coordinator of the Owosso site from the time that MMM acquired 216 East Comstock until she became the site's office manager in August 1998, reflects that apart from MMM's official charity care policy, for which patients had to fill out applications for assistance, MMM provided charitable care as follows: (1) consistent with MMM policy, Dr. Vorenkamp saw and treated all patients irrespective of their ability to pay or whether they owed money to MMM, (2) Dr. Vorenkamp had discretion to dispense with charges for, or "no charge," visits by patients who appeared to lack resources or expressed an

inability to pay for the services, (3) in MMM's 1998 and 1999 fiscal years, respectively, Dr. Vorenkamp documented 287 and 168 "no charge" visits, which she explained as typically involving rechecks of various ailments and conditions, (4) according to Krzeminski, MMM additionally sometimes wrote "off [amounts] that we accepted as payment in full with respect to services rendered patients with no insurance," (5) MMM dispensed free medication samples to low-income patients and those without insurance, (6) in 1998 and 1999, MMM performed physicals for local high school athletes for a $5 fee, which funds they donated to the high schools, and (7) MMM also offered free health screenings, including breast examinations in October 1998, and in 1999, free blood pressure, glucose, and cholesterol testing at a local factory.

This evidence supports that during the 1999 and 2000 tax years, MMM devoted substantial resources to charitable activities, and that MMM thus constitutes an institution whose overall nature was charitable. The nature of MMM's charitable activities in the 1999 and 2000 tax years closely parallels the conduct of the petitioner in *Wexford*, which the Supreme Court found qualified Wexford as an institution having an overall charitable nature:

> Petitioner has a charity care program that offers free and reduced-cost medical care to the indigent with no restrictions. It operates under an open-access policy under which it accepts any patient who walks through its doors, with preferential treatment given to no one. Although petitioner sustains notable financial losses by not restricting the number of Medicare and Medicaid patients it accepts, it bears those losses rather than restricting its treatment of patients who cannot afford to pay.
>
> Petitioner more closely matches hospitals examined in [*Auditor General v R B Smith Mem Hosp Ass'n*, 293 Mich

36; 291 NW 213 (1940), and *Michigan Sanitarium & Benevolent Ass'n v Battle Creek*, 138 Mich 676; 101 NW 855 (1904),] hospitals we found qualified for the charitable institution exemption. *Just as in those cases, the overall nature of petitioner's organization is charitable.* The losses the institution sustains are not fully subsidized by the patients, but by petitioner's parent corporations, patients who can afford to pay, and, to some extent, by government reimbursements. And the fact that petitioner receives government reimbursements has little bearing on the analysis because, despite any government aid, the beneficiary of the medical care receives a gift. . . .

Moreover, it is clear in this case that the reimbursements petitioner receives from government funding fall well short of defraying the costs petitioner incurs to render medical care. Thus, not only are Medicare and Medicaid patients receiving a gift from petitioner, but petitioner is not fully recouping its costs from the government because of the government's underpayments. [*Wexford, supra*, 474 Mich 216-217 (emphasis added).]

Lastly, § 7o(3) allows for an exemption only when the building is occupied by the charitable institution solely for the purposes for which the charitable institution was incorporated. The record contains ample evidence that in the 1999 and 2000 tax years, MMM occupied 216 East Comstock solely for the primarily charitable health care purposes for which it was incorporated.

### MRMC

Still, however, MMM does not qualify for a property tax exemption under MCL 211.7o(3) unless MRMC, the owner of 216 East Comstock during the 1999 and 2000 tax years, likewise proves that its "overall nature . . . is charitable." While the evidence regarding MRMC was not as extensive as that regarding MMM, the record supports that MRMC services the MMM patients as a laboratory drawing station, and in providing weight

management and physical therapy, and that MRMC accepted patients on the same basis as MMM.

We therefore conclude that under *Wexford, supra,* the portions of 216 East Comstock at issue, for the years at issue, were (1) owned by MRMC, a nonprofit charitable institution, and (2) either (a) occupied by MRMC solely for the purposes for which MRMC was organized, or (b) made available to MMM, also a nonprofit charitable institution, and occupied by MMM solely for the purposes for which MMM was organized. With respect to the portion of the property occupied by MMM, had MRMC occupied this portion solely for the purposes for which it was organized, the property would likewise be exempt.[4]

Reversed and remanded to the Tax Tribunal for entry of judgment in favor of petitioners. We do not retain jurisdiction.

---

[4] In light of this conclusion, we do not address the public health exemption, MCL 211.7r.