# STATE OF MICHIGAN

# COURT OF APPEALS

HOPE NETWORK – REHABILITATION
SERVICES,

        Petitioner-Appellant,

v

CITY OF KENTWOOD,

        Respondent-Appellee.

UNPUBLISHED
December 2, 2014

No. 317367
Tax Tribunal
LC No. 00-412553

Before: SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

PER CURIAM.

Petitioner, Hope Network-Rehabilitation Services (HNRS) appeals by right the Tax Tribunal's final opinion and judgment denying it a charitable institution tax exemption for its Forest Glen facility under MCL 211.7o for the 2010, 2011, and 2012 tax years. We affirm.

## I. BACKGROUND

Petitioner's property for which it claims tax exempt status is an adult foster care facility referred to as its Forest Glen facility and is located in the city of Kentwood at 4222 Burton Street SE. It has the capability to house up to six residents who are there for specialized care related to brain and/or spinal cord injuries they have suffered.

Petitioner filed an "Application for the Exemption of Real Estate" with respondent's assessor's office on October 23, 2009, seeking an exemption commencing with assessment year 2010. Instead of a response to its application for exemption, petitioner received a Notice of Assessment from respondent from which it appealed to the Board of Review. Subsequent to the Board's denial petitioner appealed the decision to the Tax Tribunal on April 13, 2011.[1]

---

[1] The 2011 petition referred to a May 28, 2010 petition and stated it was reiterating from that prior petition. Upon review, we could not find the May 28, 2010 petition as part of the lower court file or as any attached exhibit.

-1-

The parties entered a six-page stipulation to the Tribunal on May 1, 2013. The parties agreed to the subject property's address and location in the city of Kentwood; that the subject property was at all relevant times classified as commercial real property; that petitioner acquired the subject property on May 9, 2007, and completed construction of its adult foster care facility in August 2009; that since December 31, 2009, the subject property "operated between 95-100% occupancy"; that "[t]he structure on the Subject property consists of a 6,024-square-foot barrier-free building with (6) individual bedrooms, each with its own bathroom and shower, communal dining and living areas, a large kitchen, and laundry area and two office areas"; and to "[t]he values on the tax roll for the tax years at issue" to be as follows:

| Tax Year | True Cash Value | Assessed Value | Taxable Value |
| --- | --- | --- | --- |
| 2010 | 635,200 | 317,600 | 317,600 |
| 2011 | 582,000 | 291,000 | 291,000 |
| 2012 | 543,800 | 271,900 | 271,900 |

Also included in the stipulation was the language from petitioner's Articles of Incorporation Article II (Purposes) and Article III (Capitalization: Plan of Financing).

The parties' stipulation isolated the issue in this case to "whether the Subject Property is exempt from ad valorem property taxes under MCL 211.7o for the tax years at issue, which are 2010, 2011, and 2012." The parties agreed that petitioner was a nonprofit corporation and that the case of *Wexford Med Group v City of Cadillac*, 474 Mich 192, 203, 215; 713 NW2d 734 (2006), controlled and provided a definition for the word "charity"; enumerated 6 factors to consider when determining whether an institution is charitable and that of the six factors, the parties stipulated to petitioner's compliance with number 1 and number 4.

At the hearing before the Tribunal two witnesses gave testimony: Shane Kistler and Denise Osborne. Kistler was the business manager for petitioner and Osborne was the supervisor for petitioner's Forest Glen facility. Osborne testified regarding the operations of the facility and Kistler offered testimony as to the corporate and business operations. The Tribunal found that petitioner was not entitled to an exemption in an Opinion and Judgment that was entered on July 3, 2013. The Tribunal found that the Forest Glen facility was not used for charitable activity since its articulated charitable efforts of writing off bad debt for insured patients whose insurance did not cover the billed costs was nothing more than a business practice.

## II. STANDARD OF REVIEW

Our review of decisions by the Tribunal is limited. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). In the absence of fraud, a decision of the Tribunal is reviewed for "misapplication of the law or adoption of a wrong principle." *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010). The factual findings of the Tribunal are conclusive "if they are supported by competent, material, and substantive evidence on the whole record." *Liberty Hill Housing Corp v City of Livonia*, 480 Mich 44, 49; 746 NW2d

282 (2008) (internal citations omitted). This Court construes tax exemption statutes in favor of the taxing government. *OCLC Online Computer Library Ctr, Inc v Battle Creek*, 224 Mich App 608, 611–612; 569 NW2d 676 (1997).

## III. DISCUSSION

It is important to highlight what the Tribunal did not do in its Opinion and Judgment. It did not make any credibility findings regarding either of the petitioner's witnesses nor did it evaluate the documents presented at the hearing. It did not address whether the admissions policy of petitioner was discriminatory nor did it evaluate the fees charged residents at the subject property. Instead, the Tribunal declined the relief requested based on its factual finding and legal conclusion that petitioner did not use Forest Glen solely for charitable purposes.

The second Wexford factor provides that "[a] 'charitable institution' is one that is organized chiefly, if not solely, for charity." *Wexford*, 474 Mich at 215. The Tribunal reviewed the testimony and the documents and found that petitioner "wrote –off" the difference between what it billed automobile insurance companies for residents services and the amount paid by those companies for services. The Tribunal found that petitioner had a scholarship program but that no scholarships had been awarded to any Forest Glen resident since 2009 and that all of the residents at Forest Glen were covered by auto insurance payments. These findings were supported by the testimony of petitioner's business manager and thus will not be disturbed by this Court.

The Tribunal concluded that

> As such, Petitioner has provided no "gifts" (i.e., charity) for purposes of MCL 2.11.7o since the subject property began operations in 2009 because Petitioner has always been able to recoup payment, whether in part or in full, in return for the services it has rendered at the subject property. Furthermore, although Petitioner argues that its write-offs, for what insurance companies or governmental agencies do not cover, constitute charity, the Tribunal disagrees.

> The tax exemption here is claimed under MCL 211.7o (1) which provides:

> Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act.

Petitioner argues that the Tribunal misapplied the statute by focusing on the activity at Forest Glen. It argues that petitioner, even by the admission of the respondent city, is organized primarily for charitable purposes and that so long as Forest Glen is operated as a residential care facility it is entitled to an exemption from taxation. Respondent agrees with the Tribunal's focus on activity at Forest Glen and further argues that the petitioner failed to prove that it did not discriminate or that its charges were no more than what was necessary to maintain its operation.

In support of its argument that the Tribunal's focus on the operations at Forest Glen is error, petitioner cites *Wexford*:

-3-

> ...it is clear that the institution's activities taken as a whole must be examined; it is improper to focus on one particular facet or activity . . . it is the overall nature of the institution, as opposed to specific activities, that should be evaluated. [474 Mich at 212-213.]

We agree that the initial inquiry regarding charitable institution status is on the overall activities of HNRS. Indeed the Tribunal and respondent agree that HNRS is organized primarily for the charitable purpose of providing medical care. *Wexford*'s companion case, *McLaren Regional Medical Center v City of Owosso*, 275 Mich App 401; 738 NW2d 777 (2007), underscores the need to consider an entity's overall character as an ***initial*** inquiry. *McLaren* was critical of the position of the City of Owosso that McLaren was not charitable because it only gave charity when it wrote-off bad debt. However, the court in *McLaren* gave great attention to the actual operations at the sites for which exemption was sought. The actual holding of *McLaren* was to award an exemption to only those portions of buildings that were owned by an entity organized for a charitable purpose and used solely for that purpose. *Id*. at 418. In *McLaren* the court noted that substantial resources were devoted to indigent medical care. *Id*. at 416. In addition to "write-offs," the petitioner in *McLaren* provided free care, free medicine health screenings and exams. *Id*. 415-416. *Wexford* requires us to evaluate first, the overall character of the property owning institution but also, as the statute demands, that it be proven that the property for which an exemption is sought be used solely for the charitable purpose.

Next, petitioner argues that the Tribunal erred in relying on the logic or holding of *Healthlink Medical Transportation Services, Inc v City of Taylor*[2], an unpublished pre-*Wexford* case, to find that write-offs are not charity. Indeed, *Healthlink* is not precedential. However, in the absence of evidence that the facility is otherwise used for charitable purposes during the tax period in question, the logic that simply writing off a debt after it is billed and not paid is a business practice rather than charity is persuasive. In *Wexford* and *McLaren* the petitioner knew when it undertook care that it was providing a service at below market rates or costs. Here, petitioner provided no proofs of ever admitting a patient to Forest Glen without expectation of payment, or for caring for a Medicare or Medicaid patient at the facility. Petitioner asserted the existence of a scholarship fund which was unfunded and never used at Forest Glen. The Tribunal did not err in finding in this instance that the $75,000 write-off was a business practice and not a charity.

Affirmed.

/s/ Douglas B. Shapiro
/s/ William C. Whitbeck
/s/ Cynthia Diane Stephens

---

[2] Unpublished per curiam of the Court of Appeals, issued February 15, 2005 (Docket No. 249969).