*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOONEY REAL ESTATE HOLDINGS,

Petitioner-Appellee,

UNPUBLISHED
May 19, 2022

v

No. 357611
Tax Tribunal
LC No. 19-001449-TT

CITY OF SOUTHFIELD,

Respondent-Appellant.

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right a final opinion and judgment granting petitioner's motion for summary disposition, denying respondent's motion for summary disposition, and concluding that petitioner was entitled to a charitable exemption from real property taxation for the 2019 tax year. We affirm.

This tax dispute pertains to real property in Southfield occupied by Our Lady of Albanians, which is a parish of the Roman Catholic Archdiocese of Detroit ("the Archdiocese"). The property was owned by petitioner as of December 31, 2018, the date relevant to the 2019 tax year. This property will sometimes be referred to as "the property." As will be explained, petitioner also owned numerous other properties. The plural term "properties" will sometimes be used to refer to all of the properties owned by petitioner, including the property at issue here.

Petitioner is a Michigan nonprofit corporation. It has seven directors and three officers; none of the officers or directors receive any salary or compensation from petitioner. Two of its directors are ordained Catholic priests. Petitioner's sole member is the Archbishop of the Archdiocese ("the Archbishop"). Petitioner was formed to make the alignment of parish organizations consistent with Canon Law of the Roman Catholic Church. Church authorities in Rome directed dioceses in the United States to incorporate their parishes and to convey properties to those incorporated parishes. The properties used by parishes had historically been owned by the Archbishop. As part of a two-step process, the properties were first conveyed to petitioner, and petitioner later conveyed each property to the incorporated parish occupying that property. While it owned the properties, petitioner leased the properties to the Archdiocese free of charge to

-1-

continue using the properties as it always had, i.e., for religious and other charitable purposes. Petitioner owned the Our Lady of Albanians property during the 2019 tax year but then conveyed the property to the parish following its incorporation under Michigan law.

A dispute arose between petitioner and respondent over whether petitioner was entitled to an exemption from taxation for the 2019 tax year with respect to the property used by Our Lady of Albanians. Petitioner filed this action in the Tax Tribunal ("the Tribunal") seeking an exemption under MCL 211.7o(1) or (3) or MCL 211.7s. The parties filed competing motions for summary disposition. The Tribunal ruled that petitioner was not entitled in its own right to an exemption under MCL 211.7o(1) or (3) or MCL 211.7s, but the Tribunal ruled that petitioner was entitled to a so-called "pass-through" exemption under MCL 211.7o(1), i.e., that the Archdiocese's tax-exempt status was to be passed through to petitioner by virtue of the relationship between those two entities. The Tribunal thus granted summary disposition to petitioner, making it exempt from taxation with respect to the property for the 2019 tax year. This appeal followed.

On appeal, respondent argues that the Tribunal erred in concluding that petitioner was entitled to a pass-through exemption under MCL 211.7o(1). We need not reach that issue because we agree with an argument made by petitioner asserting an alternative ground for affirmance, i.e., that petitioner was entitled in its own right to an exemption under MCL 211.7o(3). We therefore affirm the Tribunal's decision because it reached the correct result, even though our reasoning differs. See *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015) ("We will affirm a [lower tribunal's] decision on a motion for summary disposition if it reached the correct result, even if our reasoning differs.").

Our Supreme Court has explained:

Absent a claim of fraud, this Court reviews decisions from the Tax Tribunal for the misapplication of law or the adoption of a wrong legal principle. We deem the tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. This Court reviews de novo the tribunal's interpretation of a tax statute. When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. This requires us to consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. This Court, as with all other courts, must give effect to every word, phrase, and clause in a statute, to avoid rendering any part of the statute nugatory or surplusage. Though this Court will generally defer to the Tax Tribunal's interpretation of a statute that it is delegated to administer, that deference will not extend to cases in which the tribunal makes a legal error. Thus, agency interpretations are entitled to respectful consideration but cannot control in the face of contradictory statutory text. [*SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 70-71; 894 NW2d 535 (2017) (quotation marks and citations omitted).]

A lower tribunal's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. When considering such a motion, a [lower tribunal] must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks and citations omitted).]

Petitioner argues that it was qualified in its own right for an exemption under MCL 211.7o(3) and that the Tribunal erred in concluding otherwise. We agree.

"The General Property Tax Act (the Act) provides that 'all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation.' " *Trinity Health-Warde Lab, LLC v Pittsfield Charter Twp*, 317 Mich App 629, 633; 895 NW2d 226 (2016), quoting MCL 211.1. "The petitioner bears the burden of proving that it is entitled to an exemption." *Trinity*, 317 Mich App at 633.

MCL 211.7o(3) provides the following exemption:

Real or personal property owned by a nonprofit charitable institution or charitable trust that is leased, loaned, or otherwise made available to another nonprofit charitable institution or charitable trust or to a nonprofit hospital or a nonprofit educational institution that is occupied by that nonprofit charitable institution, charitable trust, nonprofit hospital, or nonprofit educational institution solely for the purposes for which that nonprofit charitable institution, charitable trust, nonprofit hospital, or nonprofit educational institution was organized or established and that would be exempt from taxes collected under this act if the real or personal property were occupied by the lessor nonprofit charitable institution or charitable trust solely for the purposes for which the lessor charitable nonprofit institution was organized or the charitable trust was established is exempt from the collection of taxes under this act.

To qualify for an exemption under MCL 211.7o(3), petitioner was required to show that: (1) the owner is a nonprofit charitable institution; (2) the occupant is a nonprofit charitable institution; (3) the occupant occupies the property solely for the purposes for which the occupant was organized or established; and (4) the property would be exempt if the owner itself occupied the property solely for the purposes for which the owner was organized or established. *McLaren Regional Med Ctr v Owosso (On Remand)*, 275 Mich App 401, 410; 738 NW2d 777 (2007).

In determining whether an organization is a charitable institution, "it is the overall nature of the institution, as opposed to its specific activities, that should be evaluated." *Wexford Med Group v Cadillac*, 474 Mich 192, 213; 713 NW2d 734 (2006). Charity has the following meaning:

Charity is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or

maintaining public buildings or works or otherwise lessening the burdens of government. [*Id.* at 214 (quotation marks, brackets, and citations omitted).]

The following factors are thus used to determine whether an organization is a charitable institution:

(1) A "charitable institution" must be a nonprofit institution.

(2) A "charitable institution" is one that is organized chiefly, if not solely, for charity.

(3) A "charitable institution" does not offer its charity on a discriminatory basis by choosing who, among the group it purports to serve, deserves the services. Rather, a "charitable institution" serves any person who needs the particular type of charity being offered.

(4) A "charitable institution" brings people's minds or hearts under the influence of education or religion; relieves people's bodies from disease, suffering, or constraint; assists people to establish themselves for life; erects or maintains public buildings or works; or otherwise lessens the burdens of government.

(5) A "charitable institution" can charge for its services as long as the charges are not more than what is needed for its successful maintenance.

(6) A "charitable institution" need not meet any monetary threshold of charity to merit the charitable institution exemption; rather, if the overall nature of the institution is charitable, it is a "charitable institution" regardless of how much money it devotes to charitable activities in a particular year. [*Id.* at 215.]

The Tribunal erred in finding that petitioner was not a charitable institution. Application of the *Wexford* factors requires the conclusion that petitioner qualifies as a charitable institution.

Only the second, third, and fourth factors of the *Wexford* test were disputed by respondent and addressed by the Tribunal. The first factor is unquestionably satisfied because petitioner is indisputably a Michigan nonprofit corporation.

As for the second factor, the evidence establishes that petitioner was organized chiefly for charity. Petitioner's Articles of Incorporation described petitioner's purposes as follows:

The purposes for which the corporation is organized are:

A. To receive and administer funds and property and to operate exclusively for religious purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, and, in particular, to acquire, own and lease real property for the benefit of the Roman Catholic Archdiocese of Detroit, the Roman Catholic Archdiocese of Detroit's parishes, schools, cemeteries and other ministries, Sacred Heart Major Seminary, and other religious, charitable and educational organizations described in sections 501(c)(3) and 509(a)(1) or (2) of the Internal

-4-

Revenue Code that are acceptable to the member and operating within the geographical boundaries of the Roman Catholic Archdiocese of Detroit.

B. To acquire, own, dispose of and deal with real and personal property and interests therein and to apply gifts, grants, bequests and devises and their proceeds in furtherance of the purposes of the corporation.

C. To do such things and to perform such acts to accomplish its purposes as the Board of Directors may determine to be appropriate and as are not forbidden by section 501(c)(3) of the Internal Revenue Code, with all the power conferred on nonprofit corporations under the laws of the State of Michigan.

The corporation shall operate in strict conformity with, and subject to, the teachings of the Roman Catholic Church, the 1983 Code of Canon Law, as it may be amended from time to time, and all other universal laws of the Roman Catholic Church and particular laws, rules and guidance established by the United States Conference of Catholic Archbishops and the Archbishop of the Roman Catholic Archdiocese of Detroit (collectively, "Universal and Particular Law").

The corporation is organized and at all times shall be operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of the following organizations that are described in sections 501(c)(3) and 509(a)(1) or (2) of the Internal Revenue Code: (1) the Roman Catholic Archdiocese of Detroit, (2) the Roman Catholic Archdiocese of Detroit's parishes, schools, cemeteries and other ministries, (3) Sacred Heart Major Seminary, and (4) other religious, charitable and educational organizations acceptable to the member that are operating within the geographic boundaries of the Roman Catholic Archdiocese of Detroit and listed in *The Official Catholic Directory* published annually by P.J. Kenedy & Sons (or any successor publication).

In short, petitioner was organized for religious purposes and to acquire, own, and lease properties for the benefit of the Archdiocese and its parishes, schools, cemeteries, and other charitable and educational organizations acceptable to petitioner's sole member, the Archbishop, and listed in The Official Catholic Directory. This was done to facilitate the transfer of properties to the parishes of the Archdiocese, in accordance with a directive from church authorities in Rome. In accordance with its purpose, petitioner entered into a Use Agreement with the Archbishop whereby petitioner provided the properties free of charge to the Archbishop to use for religious purposes. As explained in an affidavit of petitioner's treasurer:

Under the Use Agreement, [petitioner] extended to the Archdiocese and its parishes, schools, cemeteries, and other ministries the right to use the properties as they had before, without any interruption and without any payment or fee. [Petitioner] has never charged the Archdiocese or the parishes for use of the properties. [Petitioner] makes its properties available for teaching the religious truths and beliefs of the Catholic Church through religious services, as well as for other religious and charitable activities. [Petitioner] does not make its properties

-5-

available for any use that is incompatible with [petitioner's] religious and charitable purposes.

Hence, petitioner generates no income. Petitioner's properties

> are made available to interested members of the general public for prayer, education, formal sacraments of the Catholic faith, as well as spiritual and cultural activities. These services are offered to all members of the public who want to attend. The vast majority of those services, for example formal masses and Bible study programs, are available to an indefinite number of people without charge. Although some services (for example wedding ceremonies) are available only to those who affirm their adherence to the Catholic faith, those services are not offered on a discriminatory basis within that group. The Archdiocese serves approximately 1.3 million Catholics throughout Southeast Michigan.

It is thus beyond dispute that petitioner was organized chiefly for charity. This conclusion does not require imputing to petitioner the activities of the Archdiocese. Petitioner's own activity reflects its charitable nature. By making its properties available free of charge to the Archdiocese to use in providing religious and other charitable services, petitioner itself engages in charitable activities. In particular, petitioner's activity of providing the properties free of charge facilitates and essentially funds the charitable activities conducted by the Archdiocese and its parishes. Neither respondent nor the Tribunal have cited any authority requiring that an entity directly provide services to end users in order to qualify as a charitable institution. Charitable organizations may provide funding or property to aid other entities or individuals who directly serve end users.[1]

The third *Wexford* factor is satisfied because petitioner does not improperly discriminate regarding who, among the group it purports to serve, deserves the services. As noted, most of the religious and other charitable services provided on petitioner's properties are available to anyone who wishes to attend. With respect to the few services that are limited to those who express adherence to the Catholic faith, such as weddings, there is no improper discrimination within the group that is served. The third *Wexford* factor bans "restrictions or conditions on charity that bear no reasonable relationship to an organization's legitimate charitable goals." *Baruch SLS, Inc v Tittabawassee Twp*, 500 Mich 345, 357; 901 NW2d 843 (2017). If the restriction is reasonably related to a permissible charitable goal, then the third *Wexford* factor is satisfied. *Id*. at 358. "The 'reasonable relationship' test should be construed quite broadly to prevent unnecessarily limiting the restrictions a charity may choose to place on its services." *Id*. Limiting certain services such as weddings to those who express adherence to the Catholic faith is reasonably related to the permissible charitable goal of teaching and spreading the Catholic religious faith.

---

[1] Although not dispositive, it is also notable that the Internal Revenue Service has classified petitioner as a public charity under federal tax law. Further, petitioner was listed in the 2019 edition of The Official Catholic Directory, an authoritative listing of Catholic institutions and clergy.

Respondent has argued that petitioner improperly discriminated by making its properties available to a class of one, the Archbishop, but this strained argument is contradicted by the Use Agreement, which provided that the Archbishop accepted the properties in trust for the use and benefit of the Archdiocese; the Archdiocese's parishes, schools, cemeteries, and other ministries; Sacred Heart Major Seminary; and other religious, charitable, and educational organizations acceptable to the Archbishop and listed in The Official Catholic Directory. The Use Agreement further provided that the Archbishop's acceptance of the grant was in accordance with MCL 458.1, which requires the Archbishop to hold property in trust for the use and benefit of Catholics or for other religious and charitable purposes. Petitioner did not improperly discriminate regarding who deserves the services, and the third *Wexford* factor is satisfied.

The fourth *Wexford* factor is satisfied for reasons already discussed. By providing its properties free of charge to facilitate the teaching and spreading of the Catholic religious faith, petitioner helped to bring people's hearts or minds under the influence of education or religion.

The fifth and sixth *Wexford* factors were not disputed by respondent or addressed by the Tribunal. In any event, those factors are satisfied. In regard to the fifth factor, petitioner itself does not charge for any services. Nor do the parishes charge for most services, including religious services. To the extent fees are charged for certain services, such as rental of a social hall or rental of a portion of the property for use of a cell tower, the amount is no more than necessary to cover the cost of the service and to maintain parish operations. See *Wexford*, 474 Mich at 218 ("A charitable institution can have a net gain—it is what the institution does with the gain that is relevant. When the gain is invested back into the institution to maintain its viability, this serves as evidence, not negation, of the institution's 'charitable' nature.") (citation omitted). As for the sixth factor, petitioner's overall nature is charitable for the reasons already discussed. Petitioner's member, directors, and officers receive no salary or financial compensation from petitioner.

Therefore, application of the *Wexford* factors reflects that petitioner, the owner of the property, is a charitable institution. The first requirement under *McLaren* for establishing the exemption of MCL 211.7o(3) is thus satisfied. *McLaren*, 275 Mich App at 410.

The second requirement under *McLaren* is that the occupant of the property is a nonprofit charitable institution, and the third requirement is that the occupant occupies the property solely for the purposes for which it was organized or established. *Id.* These requirements are indisputably satisfied. As the Tribunal correctly stated, "it is undisputed that the entity occupying the subject property, the Archdiocese, is a charitable institution and maintained a regular physical presence at the property solely for the purposes for which it was organized or established." An ordained priest and two nuns reside at the property, and parish employees have a regular physical presence on the property. The Archdiocese occupies the property to bring people's hearts and minds under the influence of Catholic religious beliefs and for other charitable purposes.

The fourth and final requirement under *McLaren* is that the property would be exempt if the owner itself occupied the property solely for the purposes for which the owner was organized or established. *McLaren*, 275 Mich App at 410. As already explained, petitioner was organized for religious and charitable purposes and to make its properties available to the Archdiocese to provide religious and charitable services. Petitioner has officers and directors, including two ordained priests. If petitioner occupied the property for the purposes for which it was organized,

it would qualify for an exemption under MCL 211.7o(1),[2] given that petitioner would then be both the owner and occupant of the property. The fourth requirement under *McLaren* is thus satisfied.

Accordingly, petitioner is qualified for the exemption of MCL 211.7o(3). In light of our resolution of this issue, we need not address the other alternative grounds for affirmance asserted by petitioner. We thus affirm the Tribunal's decision because it reached the correct result, even though our reasoning differs. *Kyocera Corp*, 313 Mich App at 449.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly

---

[2] MCL 211.7o(1) provides the following exemption:

Real or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act.